UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 18-CV-22939-SEITZ

COPPER LEAF LLC, a Washington
state Limited Liability Company,

      Plaintiff,

v.

DAVID F. FILLER, individually; DAVID F.
FILLER, ESQ., P.A., a Florida Professional
Association; and FILLER RODRIGUEZ, LLP,
a Florida Limited Liability Partnership.

      Defendants.
_____/

### ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendants', David F. Filler, David F. Filler, Esq., P.A., and Filler Rodriguez, LLP[1] ("Defendants") Motion for Summary Judgment [DE 101]. This litigation consists of an allegedly unsecured loan in default, a Ponzi scheme, and the classic elements of a whodunit fraud. DE 1 at 13-15. Plaintiff Copper Leaf LLC ("Plaintiff") initiated this action claiming intentional misrepresentation, negligent misrepresentation, and breach of fiduciary duty. DE 39. Plaintiff seeks to recoup the full loan amount of $8 million, plus a $50,000 Default Fee, a $75,000 Loan Fee, and other related costs and expenses. DE 39 at 16. Defendants seek summary judgment on all three remaining counts.[2] The Court has reviewed the Motion [DE 101], Plaintiff's Response in Opposition [DE 110], Defendants' Reply to Plaintiff's Response [DE 119], the accompanying statements of material facts [DE 102; DE 111], the record, and is otherwise fully informed.

---

[1] Plaintiff voluntarily dismissed Catherine M. Rodriguez and Catherine M. Rodriguez, P.A. on September 19, 2018. DE 21.
[2] Plaintiff voluntarily dismissed Counts V and VI, which alleged violations of Florida's Securities and Investor Protection Act and Florida's Deceptive and Unfair Trade Practices Act, respectively. DE 23. The Court dismissed Count III, professional negligence, in its Order Granting in Part Defendants' Motion to Dismiss the Second Amended Complaint. DE 43; DE 71.

1

For the reasons set out below, Defendants have failed to demonstrate that no disputed issue of material fact exists on any count. As such, Defendants' Motion for Summary Judgment [DE 101] is DENIED.

I.     **UNDISPUTED FACTS**

Plaintiff is a Washington LLC, whose members are Rodger May and Lisa May. DE 39 at 3. Plaintiff is an "infrastructure and commercial real estate company." DE 1-1 at 2. Defendant David Filler is a Florida-licensed attorney. DE 39 at 3; DE 80 at 2. His professional entities are David Filler Esq., P.A., and Filler Rodriguez LLP, which are also parties to this suit. DE 39 at 4; DE 80 at 2.

Around October 2016, Plaintiff was introduced to Brent Borland.[3] Borland is not a party to this action. Borland spearheaded the Belize Infrastructure Fund I, (the "Belize Fund"). DE 39 at 5. The relationship between Borland, Defendant Filler, and the Belize Fund, is muddied. The Florida Division of Corporations documents list "David F. Filler, Esq." as the registered agent for the Belize Fund. DE 35-1 at 1.

On December 15, 2016, Plaintiff received a letter (the "December 2016 Letter") whose author remains unknown, even though it was transmitted on Filler Rodriguez LLP letterhead and included David Filler's electronic signature. DE 102 at 1; DE 111 at 1. The contents of the letter largely speak for themselves. The letter is directed to Copper Leaf and allegedly sent by Mr. Filler. DE 1-2 at 2-4. The letter explains that borrower, "Borland Capital Group," would execute a "Note and Security & Pledge Agreement" providing real property in Belize as collateral for Plaintiff's $5 million loan, under a "2 to 1 coverage worth of collateral" for the loan. *Id.* at 2-3. It describes what happens in case of default, and

---

[3] Mr. Borland was prosecuted and sentenced in the Southern District of New York in *USA v. Borland*, Case No. 18-CR-00487. DE 39 at 5. The US Securities and Exchange Commission also filed a complaint against him in *SEC v. Brent Borland et. al*, Case No. 18-cv-4352. *Id.* at 1-3.

specifically states that the assets would be held in escrow with Filler Rodriguez, LLP. *Id.* at 2.

On December 30, 2016, Plaintiff entered into a Loan Agreement with the Belize Fund in the amount of $5 million. DE 1-1 at 2. The Loan Agreement had a term of 24 months and was due in full with interest on January 1, 2019. *Id.* at 10. The Loan Agreement was signed by Brent Borland on behalf of the Belize Fund and Rodger May on behalf of Plaintiff. *Id.* at 9. Exhibit A to the Loan Agreement, titled "Real Estate Pledge and Security Agreement," describes the properties, specifically "Parcel 2169," which allegedly secured this loan. *Id.* at 15. The Security Agreement explicitly states that the ownership title of these properties, valued at $10 million, was to be held in escrow with Defendant Filler Rodriguez, LLP. *Id.* at 15.

On April 19, 2017, yet again, Plaintiff received a letter (the "April 2017 Letter") on Filler Rodriguez LLP letterhead, with Defendant Filler's electronic signature affixed, stating that Mr. Filler was holding $11 million worth of Belizean real property in escrow as collateral for the loan. DE 111-7 at 1. However, Defendant Filler did not obtain the legal documents required to hold the Belizean property in escrow. *See* Filler Dep. 195:23-196:1, May 12, 2022, DE 158-1.

On June 12, 2017, Plaintiff and the Fund entered into a Modification Agreement which increased the loan to $8 million. DE 1-4 at 2. The Modification Agreement mentions the addition of another property, the Placencia Golf Course, to secure the additional funds. *Id.* The Modification Agreement explicitly states that the parties would execute a revised Real Estate Pledge and Security Agreement; however, they did not do so. DE 1-4 at 2; DE 102 at 3-4; DE 111 at 4.

## II. PLAINTIFF'S ALLEGATIONS

From June 2017 onward, the Belize Fund allegedly failed to make payments to Plaintiff. DE 39 at 15. Plaintiff initiated this action following the default, claiming intentional misrepresentation, negligent misrepresentation, and breach of fiduciary duty against Defendants. DE 39. In their Motion for Summary Judgment, Defendants argue that (1) the merger clauses in the Loan and Modification Agreements bar this action; (2) there was no escrow relationship between Plaintiff and Defendants because there was no written escrow agreement; and (3) Defendants did not cause Plaintiff's damages. Combing through Defendants' arguments, as well as Plaintiff's response, highlights the myriad of disputed facts which plague this case.

At the crux of this matter are a few key factual questions. First, did Defendant Filler author, or in any way participate in the drafting of, the December 2016 Letter to Plaintiff? Second, did Defendant Filler participate in any way in the drafting or execution of the Loan Agreement and subsequent Modification Agreement between the Belize Fund and Plaintiff? Third, to what extent did Defendant Filler operate as an escrow agent for Mr. Borland, not just in relation to the Belize Fund but in prior business deals? Fourth, was Plaintiff justified in relying on the December 2016 Letter prior to executing the Loan Agreement? Lastly, who sent the April 2017 Letter to Copper Leaf, claiming that Defendant Filler was, in fact, holding the properties in escrow? DE 111-7. The questions left unanswered, the inconsistent statements of the parties, and the voluminous exhibits support the denial of Defendants' Motion for Summary Judgment [DE 101].

## III. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Once the

4

moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting FED. R. CIV. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52).

In opposing a proper motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* FED. R. CIV. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). With these principles in mind, the Court turns to the analysis of Defendants' Motion for Summary Judgment [DE 101].

## IV. ANALYSIS

### a. The Merger Clauses Do Not Bar Plaintiff's Misrepresentation Claims

Unlike what Defendants claim, the merger clauses in the Loan and Modification Agreements do not bar Plaintiff's claims.[4] DE 101 at 2. Defendants argue that the merger clauses supersede the December 2016 letter. *Id.* Under New York law,[5] "general, vague,

---

[4] Defendants' merger clause defense does not apply to Plaintiff's breach of fiduciary duty claim and can only apply to Plaintiff's misrepresentation claims.
[5] The Court agrees with the parties that New York law governs the application of the merger clauses to the instant dispute. DE 101 at 7-8; DE 110 at 2.

5

and merely omnibus statements that the written instrument embodies the whole agreement between the parties" do not preclude "the use of parol evidence to establish [a] fraudulent inducement claim." *Intl. Bus. Machines Corp. v. GlobalFoundries U.S. Inc.*, 204 A.D.3d 441, 442 (1st Dept. 2022) (citing *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320 (1959); *Laduzinski v. Alvarez & Marsal Taxand LLC*, 132 A.D.3d 164, 169 (1st Dept. 2015)).

In this case, the merger clauses in the Loan and Modification Agreements simply state that the two agreements contain the entire understanding of the parties and supersede any prior understanding. DE 1-1 at 7; DE 1-4 at 2. They make no reference to the specific issues in this dispute. As such, they are too general and vague to preclude the use of parol evidence. Therefore, they are not a bar to Plaintiff's claims.

### b. Disputed Issues of Material Fact Exist Regarding Plaintiff's Claims of Intentional and Negligent Misrepresentation

Drawing all inferences in favor of Plaintiff, there remain questions of material fact regarding the elements required to prevail on the misrepresentation counts. Defendants' Motion for Summary Judgment [DE 101] is therefore denied on those counts.

To succeed on a claim for fraudulent or intentional misrepresentation, Plaintiff must show four elements: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (internal citation omitted).

Regarding negligent misrepresentation, the knowledge element is satisfied when the representer "made the representation without knowledge of its truth or falsity or should have known the representation was false." *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 127 F.3d 1390, 1395 (11th Cir. 1997); *see also* Restatement (Second) of Torts § 552 cmt. a (1977) (distinguishing negligent misrepresentation from intentional misrepresentation as "[w]hen

6

there is no intent to deceive but only good faith coupled with negligence"). Justifiable reliance is an element of negligent misrepresentation, whereas it is not required for an intentional misrepresentation claim. *Butler*, 44 So. 3d at 105. Principles of comparative negligence apply to negligent misrepresentation claims and the recipient of misinformation cannot excuse their own failure to exercise due diligence. *Id.* at 105 (citing *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So.2d 334, 339 (Fla.1997)). Whether negligent or intentional, the essence of an action for misrepresentation is the communication of misinformation on which the recipient relies. *Omnipol, A.S. v. Multinational Def. Services, LLC*, 32 F.4th 1298, 1306 (11th Cir. 2022).

There remain key disputes as to material facts regarding the intentional and negligent misrepresentation counts that stop this Court from ruling that Defendants are entitled to summary judgment. Plaintiff argues that the statements made in the December 2016 and April 2017 Letters as to the loan's securitization and the escrow arrangement are categorically false. DE 39 at 16; DE 111 at 3. However, Defendant denies authoring the December 2016 Letter at all. *See* Filler Dep. 129:21-23, May 12, 2022, DE 158-1. Mr. Filler also denied having "independent knowledge of Borland Capital Group executing a security and pledge agreement." DE 158-1 at 181.

This murkiness regarding the letters and the alleged misrepresentations therein bears on Defendants' knowledge of falsity and intention to induce Plaintiff, at a minimum, which hinge on witness credibility. These disputed facts "present[] a sufficient disagreement to require submission to a jury" and are not "so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52)).

Regarding the negligent misrepresentation claim, the justifiable reliance element also suffers from disputed material facts. The extent of Plaintiff's due diligence prior to the

7

loan is relevant to whether its alleged reliance on the loan documents was justifiable, as principles of comparative negligence apply to negligent misrepresentation claims. *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010). The dispute as to Plaintiff's due diligence and the associated justifiable reliance inquiry is therefore also one for the jury to decide.

### c. Disputed Issues of Material Fact Exist Regarding the Existence of an Escrow Relationship and Plaintiff's Breach of Fiduciary Duty Claim

Because there are genuine issues of material fact as to Plaintiff's escrow arrangement with Defendants and the alleged resulting breach of fiduciary duty, Defendants' Motion for Summary Judgment [DE 101] is denied on that count, too.

It is well-settled that one who undertakes to act as an escrow holder assumes fiduciary duties as a matter of law. *Oginsky v. Paragon Properties of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1375 (S.D. Fla. 2011) (citing *United Am. Bank of Central Fla. v. Seligman*, 599 So.2d 1014, 1016 (Fla. 5th DCA 1992)). Handling escrowed funds in a manner contrary to the escrow agreement constitutes a breach of an escrow holder's fiduciary duties. *Oginsky*, 784 F. Supp. 2d at 1376 (internal citations omitted). The key determination is whether there was an escrow arrangement at the outset.

To establish a binding escrow, there must be an instrument embodying conditions mutually beneficial to both parties, agreed to by both parties, which is then communicated to and deposited with a third party. *Id.* at 1375. However, assent to serving as an escrow agent may be shown by acts or conduct of the parties. *Armbruster v. Alvin*, 437 So. 2d 725, 727 (Fla. 3d DCA 1983); *see also Oginsky*, 784 F. Supp. 2d at 1375. In the absence of an express written escrow agreement, the law will imply from the circumstances of the escrow that the agent has undertaken a legal obligation (1) to know the provisions and conditions of the principal agreement concerning the escrowed property, and (2), to exercise reasonable

skill and ordinary diligence in holding and delivering possession of the escrowed property in strict accordance with the principals' agreement. *Seligman*, 599 So. 2d at 1016.

Defendants argue that Plaintiff's breach of fiduciary duty claim fails due to the lack of a written escrow agreement. DE 101 at 12. In the first instance, Plaintiff responds that a formal written escrow agreement is not required to establish an escrow relationship under Florida law, and Defendants undertook to act as an escrow agent through their conduct under the given circumstances. DE 110 at 9-10. In the alternative, Plaintiff argues that the December 2016 and April 2017 Letters serve as the written instruments needed for an escrow relationship, if a formal written agreement is required. *Id.* at 10-12.

This Court agrees with Defendants that there was no formal written escrow agreement. However, it concurs with Plaintiff that such a formal agreement is not required to establish an escrow agreement under Florida law. *See, e.g., Armbruster v. Alvin*, 437 So. 2d 725, 727 (Fla. 3d Dist. Ct. App. 1983). It is thus of paramount importance to closely scrutinize the parties' conduct, to see if there is an implied-in-law escrow relationship.

A myriad of disputed issues of material fact remain in this regard. Based on Defendant Filler's testimony, it is in dispute whether Borland executed the December 2016 Letter on Filler's behalf without Filler's authorization. Filler Dep. 145:19-146:17, May 12, 2022, DE 158-1. The extent of Borland's relationship with Defendant Filler, and whether the two conducted business in the past in a similar manner as they did in the Copper Leaf loan are also unclear. Filler Dep. 149:11-22, 194:12-197:7, May 12, 2022, DE 158-1. As to whether Borland held out Defendant Filler as an escrow agent, Defendant Filler states that Borland "was not keeping me abreast of which loans [Borland] was making and to whom." *Id.* at 182:11-17. On the other hand, Defendant Filler also testified that he "was under the understanding that Brent Borland was potentially using Filler Rodriguez LLP as escrow agent" and was "on notice" that he would serve as an escrow agent "subject to a variety of

9

things occurring." *Id.* at 190:20-25, 231:20-24. The record evidence shows that there are genuine issues of material fact that must decided by the jury. For that reason, Defendants' Motion for Summary Judgment [DE 101] regarding the breach of fiduciary duty claim is also denied.

### d. Disputed Issues of Material Fact Exist Regarding the Extent to which Plaintiff's Damages are Attributable to Defendants

Defendants argue in their Motion for Summary Judgment that Plaintiff's damages were not proximately caused by Defendants' actions, and were instead due to Plaintiff's own failure to conduct proper due diligence. DE 101 at 3-4, 12-19. Whether Plaintiff acted reasonably under the circumstances is a disputed question of material fact that is for the jury. Therefore, Defendants' Motion [DE 101] is also denied on that basis.

## V. CONCLUSION

It is clear from both parties' papers that there is little that they agree on that is dispositive of this dispute. Therefore, the jury will have to evaluate the witnesses' credibility, and whether Plaintiff has established all elements of their causes of actions. Accordingly, it is

ORDERED THAT Defendants' Motion for Summary Judgment [DE 101] is **DENIED.**

DONE and ORDERED in Miami, Florida, this 21st day of February, 2023.

*Patricia A. Seitz*
PATRICIA A. SEITZ
UNITED STATES SENIOR DISTRICT JUDGE

cc: All counsel of record